IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAFAEL ARROYO,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 12-1846 (MEL)

## OPINION AND ORDER

### I.    PROCEDURAL HISTORY

On January 15, 2013, plaintiff Rafael Arroyo ("plaintiff") filed an amended complaint alleging gender discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), also making reference to the Age Discrimination in Employment Act. ECF No. 14. On April 10, 2014 the Commissioner of Social Security ("defendant" or the "Commissioner") filed a motion for summary judgment arguing that the complaint should be dismissed because plaintiff "failed to demonstrate[] either a *prima facie* case of gender, reprisal, and / or age discrimination and is unable to show that [defendant]'s legitimate, non-discriminatory reasons for its actions are pretextual."[1] ECF Nos. 51; 52; 53. Pending before the court are defendant's motion, plaintiff's response in opposition (ECF Nos. 72; 73), and defendant's reply (ECF Nos. 75; 79). For the reasons set forth below the Commissioner's motion for summary judgment is granted.

---

[1] Although the Commissioner devotes approximately six pages of its memorandum arguing for dismissal of ADEA claims (ECF No. 52, at 17-23), all age discrimination claims were dismissed in this case on September 23, 2013. ECF No. 38.

## II.   UNCONTESTED FACTS

Plaintiff was employed as a Teleservice Representative ("TSR") in the San Juan ("SJ") Teleservice Center ("TSC") from February 11, 1991 through May 2003, and was promoted to grade GS-8 level in April 1999. ECF Nos. 64-1, ¶¶ 1, 19; 72, ¶¶ 1, 19. Since May 2003 he has been employed as a Claims Representative ("CR"), grade GS-11, with the Social Security Administration (the "agency") in the Hato Tejas Branch Office. ECF Nos. 64-1, ¶ 19; 72, ¶ 19. Between 1993 and June, 2012 plaintiff represented agency employees in Equal Employment Opportunity ("EEO") grievances and other labor matters.[2] ECF Nos. 72, at 7, ¶¶ 13-15; 72, ¶¶ 13-15.

### a.   Case No. 99-0223[3]

In March 1997 plaintiff applied for a promotion to a CR position, grade GS-9, in the agency's St. Croix District Office ("DO"), which was posted under vacancy announcement number ("VAN") ROII 97-23-B-JA. ECF Nos. 64-1, ¶ 2; 72, ¶ 2. The agency cancelled VAN ROII 97-23-B-JA after plaintiff applied to it. ECF Nos. 64-1, ¶ 3; 72, ¶ 3. In April 1997 plaintiff applied for a promotion to one of several CR positions in the agency's DOs in Mayagüez, Caguas, Ponce, and Arecibo posted under VAN ROII 97-23-JA.[4] ECF Nos. 64-1, ¶ 4; 72, ¶ 4. The selecting officials for the CR positions filled under VAN ROII 97-23-JA were María

---

[2] The precise uncontested facts in support of this proposition state: "From 1993 approximately until 1995 plaintiff represented union employees in EEO grievances and other labor related matters against the agency and its officials."; "From 1995 until 2009 plaintiff represented several employees in EEO processes within the agency."; and "Plaintiff provided representation on behalf of employees in the agency from 2009 until June 2012." ECF Nos. 72, at 7, ¶¶ 13-15; 75, ¶¶ 13-15. The nature of plaintiff's representations, the frequency and number of representations, and the differences among his representations over the three periods of time enumerated are unclear from the proposed uncontested facts and evidence offered in support thereof.

[3] The case numbers 99-0023, 00-0489, 09-0500, and 11-0675 refer to those assigned to the four complaints plaintiff made before the EEO regarding the underlying conduct in this case. In their filings the parties use these numbers to distinguish among the promotions for which plaintiff applied. Furthermore, the Commissioner's exhibits in support of its motion for summary judgment consist of the four Reports of Investigation ("ROIs") compiled by the Social Security Administration in response to plaintiff's complaints.

[4] Plaintiff clarifies that he applied for eleven CR positions identified in VAN ROII 97-23-JA. ECF No. 72, ¶ 4.

Montalvo, District Manager ("DM") of the Mayaguez DO; Miguel Negrón, DM of the Caguas DO; Lourdes Hernández, DM of the Ponce DO; and Francisco Siaca, DM of the Arecibo DO. ECF Nos. 64-1, ¶ 5; 72, ¶ 5. Hugo Córdova, Area Director for Area IV, was the concurring official for each of the positions filled under VAN ROII 97-23-JA. ECF Nos. 64-1, ¶ 6; 72, ¶ 6. Plaintiff was one of many candidates included on the best-qualified list for the CR positions posted under VAN ROII 97-23-JA. ECF Nos. 64-1, ¶ 7; 72, ¶ 7. From the best-qualified list, Ms. Montalvo selected Wanda Ramírez, Claribel Ramírez, and Ana Pérez; Mr. Negrón selected Héctor Miranda, Wanda Sánchez, and Olga Ortíz; Ms. Hernández selected María Vega, Wanda Esteva, and José Vázquez; and Mr. Siaca selected Margarita Carrión-Román and Heriberto Molina to fill the eleven CR positions announced under VAN ROII 97-23-JA. ECF Nos. 64-1, ¶ 8; 72, ¶ 8. Mr. Córdova concurred with each of the selections. ECF Nos. 64-1, ¶ 9; 72, ¶ 9. Plaintiff first sought EEO counseling regarding Case No. 99-0223 on July 15, 1997. ECF Nos. 64-1, ¶ 10; 72, ¶ 10. In March 1999 plaintiff filed a formal EEO complaint in which he alleged that the agency did not select him for any of the CR positions posted under VANs ROII 97-23-JA and ROII 97-23-B-JA in reprisal for his prior EEO "activity". ECF Nos. 64-1, ¶ 11; 72, ¶ 11.

**b.   Case No. 00-0489**

In March 2000 plaintiff applied for a promotion to one of five positions under VAN ROII 518-00-U. ECF Nos. 64-1, ¶ 12; 72, ¶ 12. Robert Caraballo, DM of the Humacao DO and Mr. Negrón were selecting officials for the CR positions. ECF Nos. 64-1, ¶ 13; 72, ¶ 13. Mr. Córdova was the concurring official for each of the five selections. ECF Nos. 64-1, ¶ 14; 72, ¶ 14. Plaintiff was one of many candidates included on the well-qualified list for the CR positions. ECF Nos. 64-1, ¶ 15; 72, ¶ 15. Mr. Caraballo selected Christal Jeremy-Mark; and Mr. Negrón

selected María Torres, Gladys Rivera, Evy Santiago, and Violeta Claudio from the well-qualified list to fill the five CR positions posted under VAN ROII 518-00-U. ECF Nos. 64-1, ¶ 16; 72, ¶ 16. Mr. Córdova concurred with each of the selections. ECF Nos. 64-1, ¶ 17; 72, ¶ 17. Mr. Negrón and Mr. Córdova both knew of plaintiff's prior EEO activity since they were interviewed regarding the complaint in Case No. 99-0223, which was pending at the time of they made their selection. ECF Nos. 72, at 5, ¶ 2; 75, ¶ 2. On August 2, 2000, plaintiff filed a formal EEO complaint, in which he alleged that the agency did not select him for any of the CR positions posted under VAN ROII 518-00-U based on his gender and in reprisal for his prior EEO "activity". ECF Nos. 64-1, ¶ 18; 72, ¶ 18.

### c.   Case No. 09-0500

In January 2009 plaintiff applied for a promotion to SJ TSC Supervisor, grade GS-12, posted under VAN SN-23122609-ROII-044. ECF Nos. 64-1, ¶ 20; 72, ¶ 20. Ms. Deborah Saleh-Natel, an Automation Training Specialist, grade GS-12, at the SJ TSC, also applied for the TSC Supervisor position. ECF Nos. 64-1, ¶ 21; 72, ¶ 21. Plaintiff and Ms. Saleh-Natel were two of many candidates included on the well-qualified lists for the SJ TSC Supervisor position. ECF Nos. 64-1, ¶ 23; 72, ¶ 23. Ms. Saleh-Natel had 17 years of SJ TSC experience, which included four positions of increasing responsibility such as a TSR, grade GS-8, Technical Assistant, grade GS-9, CR, GS-11, and Automation Training Specialist, GS-12. ECF Nos. 64-1, ¶ 22; 72, ¶ 22. At the time of her application to the TSC Supervisory position, Ms. Saleh-Natel had less than 52 weeks in the position of Automation Training Specialist (GS-12) and she qualified in the promotion certificate of eligibles at the same level as plaintiff. ECF Nos. 72, at 5, ¶ 3; 75, ¶ 3. While employed as a TSR plaintiff was awarded a commissioner citation for serving as lead

instructor of a cadre of seven TSRs who gave training over four months in Wilkes Barre, PA. ECF Nos. 72, at 5, ¶ 4; 75, ¶ 4. Plaintiff adjudicated disability claims while working as a CR, and gained knowledge of the components of the claims process for over nine years. Id.

Laurinda Carrasquillo, SJ TSC Manager, was the selecting official who selected Ms. Saleh-Natel for the position. ECF Nos. 64-1, ¶¶ 24, 26; 72, ¶¶ 24, 26. Ms. Linda Schuster, TSC Director, who was the concurring official for the position, concurred with Ms. Carrasquillo's selection. ECF Nos. 64-1, ¶¶ 25, 27; 72, ¶¶ 25, 27. ECF Nos. 72, at 5, ¶ 3; 75, ¶ 3. Id. At the time that Ms. Schuster concurred with Ms. Carasquillo to select Ms. Saleh-Natel for the position of TSC Supervision, plaintiff was representing Aida Mora Cintrón in an EEO complaint in which Ms. Carrasquillo and Ms. Schuster were charged with committing discrimination against Ms. Cintrón. ECF Nos. 72, at 5, ¶ 6; 75, ¶ 6. On June 30, 2009 plaintiff filed a formal EEO complaint, in which he alleged that the agency did not select him for San Juan TSC Supervisor in reprisal for his prior EEO "activity". ECF Nos. 64-1, ¶ 28; 72, ¶ 28.

### d.   Case No. 11-0675

In February 2011 plaintiff applied for a promotion to Deputy TSC Manager, grade GS-12, posted under VAN SN-428554-11-ROII-125.[5] ECF Nos. 64-1, ¶ 31; 72, ¶ 31. Ms. Alicea Grisel, who had been employed as a Field Office Operations Supervisor, grade GS-12, since July 2008 and a TSC Operations Supervisor from September 2006 through July 2008, also applied for the Deputy TSC Manager position. ECF Nos. 64-1, ¶ 32; 72, ¶ 32. Ms. Grisel had no prior EEO "activity".

---

[5] In April, 2011 plaintiff also applied for a promotion to one of six Disability Processing Specialist (GS-12) positions, posted under VAN SN-457849-11-ROII-164. ECF Nos. 64-1, ¶ 41; 72, ¶ 41. He clarified in his response in opposition to defendant's motion for summary judgment that the only claim before the court in the case of caption is that which is related to the promotion to Deputy TSC Manager. ECF No. 73. Plaintiff has filed an EEO complaint regarding this job posting, which is currently pending before the EEO; the failure to promote him via the Disability Processing Specialist vacancy is not part of his complaint in the instant action. ECF No. 72-1, ¶ 10

ECF Nos. 64-1, ¶ 33; 72, ¶ 33. The agency listed the candidates who were eligible for the Deputy
TSC Manager position on two lists: a) the Merit Promotion Certificate of Eligibles, for candidates
seeking a promotion; and b) Non-Competitive Candidate Referral List—Reassignment, for
candidates seeking a lateral transfer. ECF Nos. 64-1, ¶ 34; 72, ¶ 34. The agency included plaintiff
on the Merit Promotion Certificate Eligibles for the Deputy TSC Manager position. ECF Nos. 64-1,
¶ 35; 72, ¶ 35. The agency listed Ms. Grisel on the Non-Competitive Candidate Referral List—
Reassignment for the Deputy TSC Manager position. ECF Nos. 64-1, ¶ 36; 72, ¶ 36. TSC Director
Denise Hachicho was the selecting official who selected Ms. Grisel for the position. ECF Nos. 64-1,
¶¶ 37, 39; 72, ¶¶ 37, 39. Regional Commissioner Beatrice Disman, who was the concurring official
for the Deputy TSC Manager position, concurred with Ms. Hachicho's selection. ECF Nos. 64-1, ¶¶
38, 40; 72, ¶¶ 38, 40. All selecting officers in Case No. 11-0675 knew of plaintiff's prior EEO
activity.[6] ECF Nos. 72, at 7, ¶ 3; 75, ¶ 7. Ms. Disman requested that Frederick Maurin, Ms.
Grisel's first-line supervisor, send a recommendation letter in favor of Ms. Grisel to Ms.
Hachicho. ECF Nos. 72, at 7, ¶ 10; 75, ¶ 10. Ms. Hachicho received a recommendation letter
from Mr. Maurin 24 hours before the selection was made.[7] ECF Nos. 72, at 6, ¶ 9; 75, ¶ 9.

---

[6] In its response to plaintiff's proposed uncontested facts, defendant states that "[t]he record shows that
Ms. Hachicho was not aware of Arroyo's previous EEO activities." ECF. No. 75, ¶ 7. However, since the
Commissioner does not provide any citation to the record in support of this contention, thus the proposed fact is
deemed admitted.
[7] Plaintiff proposes as an uncontested fact Ms. Grisel's supervisor "emphasiz[ed] he highly recommended her
selection mostly for her stance as an anti union [*sic*] supervisor and anti employee [*sic*] rights attitudes." ECF No.
72, at 6, ¶ 9. A review of this letter reveals that the recommendation does not refer to Ms. Grisel as anti-union or
anti-employee. It discusses her qualifications for the position, noting among other things that she "has a lot of
talent," she "is very familiar with TSC operations," she "does not shoot from the hip," and "[s]he effectively handled
a hostile and negative Union rep in the TSC and helped calm LMR issues at that site." ROI 11-1605, Exhibit 14, at
8. Although the recommendation does reference her handing of a union representative, it does not state that she is
anti-union, but rather is framed in terms of her effective management of the situation. See id.

6

### III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine

which version of the facts is most compelling." <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Griggs-Ryan</u>, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." <u>Greenburg v. P. R. Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### IV.   LEGAL ANALYSIS

#### A.   Retaliation

The Title VII anti-retaliation provision makes it unlawful

> for an employer to discriminate against any of its employees . . . because [they have] opposed any practice made an unlawful employment practice by this subchapter, or because [they have] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). To prove a claim of retaliation under Title VII a plaintiff must establish: (1) plaintiff's protected participation or opposition; (2) a materially-adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to "dissuade a reasonable worker from making or supporting a charge of discrimination"; and (3) the adverse action taken was causally linked to the plaintiff's protected

activity. <u>Mariani–Colón v. Dep't of Homeland Sec.</u>, 511 F.3d 216, 223 (1st Cir. 2007). With regard to causation, unlike with respect to proving status-based discrimination, for which "[i]t suffices . . . to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision," the Supreme Court of the United States has recently clarified that "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." <u>Univ.of Tex. Sw. Med. Center v. Nassar</u>, — U.S. —, 133 S.Ct. 2517, 2520, 2534 (2013); <u>see also</u> <u>Travers v. Flight Servs. & Sys., Inc.</u>, 737 F.3d 144, n. 1 (1st Cir. 2013) ("[T]he Supreme Court has required 'but-for' causation under the . . . anti-retaliation provision of Title VII of the Civil Rights Act of 1964, rejecting the 'motivating factor' test applied by the lower court in that case.").

If a plaintiff makes this showing the burden swings to defendant "to articulate a legitimate, non-retaliatory reason for its employment decision." <u>Collazo v. Bristol-Meyers Squibb Mfg., Inc.</u>, 617 F.3d 39, 46 (1st Cir. 2010). If a defendant can do this then the burden shifts back to the plaintiff to show that the reason is pretext and that retaliatory animus was the true motive behind the decision. <u>Id.</u> "The pretext inquiry focuses on the employer, and whether the employer believed that its stated reason for the termination was credible." <u>Ponte v. Steelcase Inc.</u>, 741 F.3d 310, 323 (1st Cir. 2014) (citing <u>Meléndez v. Autogermana, Inc.</u>, 622 F.3d 46, 53 (1st Cir.2010)). "For a plaintiff to 'impugn the veracity' of the employer's proffered reason is insufficient; instead, a plaintiff must proffer specific facts that would enable a reasonable factfinder to conclude that the employer's reason for termination was a 'sham' intended to cover

up the employer's true motive. Id. (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir.1991)).

### a. Case No. 99-0223[8]

#### i. *Prima Facie* Case

The Commissioner does not dispute that plaintiff has engaged in protected activity or that the failure to promote him constitutes a materially-adverse employment action that satisfies the second prong of plaintiff's *prima facie* case. See ECF No. 52. The focus of the Commissioner's argument is that plaintiff cannot meet his burden with regard to the third prong because there is insufficient temporal proximity from which to imply a causal connection between the protected activity and adverse employment action. Plaintiff notes that "temporal proximity between the adverse employment action and the protected activity is not a *sine qua non* of a retaliation claim, but only one of the ways to infer retaliatory motives." ECF No. 73, at 9. The problem for plaintiff, however, is that he does not argue or present evidence to suggest that any of other "ways" to infer retaliatory animus apply in this case. Thus, his *prima facie* case rests on whether there is sufficient temporal proximity to satisfy his burden under the third prong.

---

[8] The Commissioner also argues that plaintiff's claim regarding VAN ROII 97-23-B-JA is untimely because plaintiff failed to contact an EEO counselor regarding his contention that the agency cancelled said vacancy announcement in reprisal for his prior EEO activity within 45 days of the date the announcement was cancelled, as required by the exhaustion requirement of 29 C.F.R. § 1614.105(a). See ECF No. 52, at 4. In furtherance of this argument the Commissioner states that the agency notified its personnel on April 11, 1997 that VAN ROII 97-23-B-JA had been cancelled. Id. at 5. Because plaintiff did not contact an EEO counsel until July 15, 1997, the Commissioner argues this allegation should be dismissed. Id. The Commissioner's exhibit does indicate that the closing date for VAN ROII 97-23-B-JA was April 22, 1997, and states that the "announcement is cancelled in its entirety." ROI 99-0233, Exhibit 15, at 1. Plaintiff points out that the exhibit to which the Commissioner cites does not reference the date April 11, 2007 or evince that the agency provided notice to its employees regarding the cancellation. He argues that the argument that § 1614.105(a) bars plaintiff's claim regarding VAN ROII 97-23-B-JA. ECF No. 73, at 8-9. Because plaintiff's claim regarding VAN ROII 97-23-B-JA fails on its merits, however, it is not necessary to reach the Commissioner's alternative argument that it is entitled to summary judgment of the claim regarding VAN ROII 97-23-B-JA on exhaustion grounds, as well.

It is undisputed that between 1993 and 1995 plaintiff represented union employees in EEO grievances and other labor matters against the agency and its officials, that between 1995 and 2009 plaintiff represented "several employees" in EEO processes, and that between 2009 and June 2012 plaintiff was involved "in the agency providing representation on behalf of employees." In his response in opposition, plaintiff amalgamates these facts, claiming "it is an uncontested fact in this case that [p]laintiff, in an ongoing manner has been representing employees in EEO and union grievances sins [*sic*] 1993 until present." ECF No. 73, at 9. Plaintiff's characterization of his protected activity as "ongoing" is imprecise and does not accurately reflect the contents of the record.[9] As the Commissioner contends, his union representation between 1993 and 1995 is not sufficiently close to his applications for promotions in March and April 1997 to create an inference that the failure to promote him was casually related to said representation. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001); <u>see also</u> <u>Rodríguez v. Boehringer Ingelheim Pharm., Inc.</u>, 425 F.3d 67, 84 (1st Cir.2005) (two-month gap too remote); <u>Calero–Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 25 (1st Cir.2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."); <u>Mesnick</u>, 950 F.2d at 828 (nine-month gap too remote). At a minimum, the uncontested facts establish that there is a fifteen month gap between his union representation

---

[9] Contrary to what plaintiff contends in his memorandum, neither plaintiff's nor defendant's proposed uncontested facts explicitly state that plaintiff's representation of employees in EEO grievances or other types of labor matters between 1995 and 2009 was "ongoing" or continuous, without interruption. <u>See</u> ECF Nos. 64-1; 72.

and his applications to the positions in question, which is too remote from which to infer causality.

What is uncontested regarding his protected activity between 1995 and 2009 is that he represented "several" employees in EEO processes over that period, not that his representation was continuous or "ongoing." Although the dates plaintiff applied for promotions related to Case No. 99-0223 fall within this time frame, this vague uncontested fact does not give rise to a logical conclusion that there was sufficient temporal proximity between the EEO activity and the failure to promote plaintiff; it is simply ambiguous with regard to when the representations actually occurred. If plaintiff could satisfy his burden of establishing temporal proximity for the claims in Case No. 99-0223 based solely on the fact that he represented "several" EEO employees from 1995 to 2009, he could in effect establish a causal link throughout the entire fourteen-year period. For example, it is entirely possible that plaintiff represented one employee in 1995, and did not represent another employee until 1999. If this were true, then there would not be sufficient temporal proximity between the relevant events for plaintiff to satisfy his burden of showing a causal nexus, as the gap would be too large. While the uncontested fact does not foreclose the possibility that plaintiff engaged in protected activity around March and April 1997, it also does not establish that he did. Because the uncontested facts alone are insufficient for plaintiff to make out a *prima facie* case of retaliation regarding the activity in Case No. 99-0223 and because plaintiff does not adduce any additional evidence in favor of his argument that there is sufficient temporal proximity to meet his burden, summary judgment is warranted for the claims related to Case No. 99-0023.

12

### ii.  Pretext

Even assuming, *arguendo*, that plaintiff could establish a *prima facie* case, he has not met his burden of establishing that the Commissioner's legitimate, non-discriminatory reasons for declining to promote him are pretext for retaliation. With respect to VAN ROII 97-23-B-JA, the Commissioner contends that it did not promote plaintiff because the announcement was cancelled when the vacancy in the St. Croix DO did not arise. It cites to an affidavit by Mr. Córdova, which states:

> [VAN ROII 97-23-B-JA] advertised for a CR position in St. Croix. The St. Croix office is quite small, with a total of five employees, three of whom are CRs. One of the CRs, Rosemarie, requested a hardship transfer to Florida. The transfer was approved at the Regional Office level after a Florida office agreed to accept her. Her pending departure was what prompted the VAN. However, she changed her mind about the transfer. Therefore, there was no longer a CR vacancy in St. Croix, and the VAN was cancelled. The cancellation of the VAN had nothing to do with Mr. Arroyo.

ROI 00-0223, Exhibit 9, at 1.

Plaintiff's argument in his response in opposition that the Commissioner's proffered reason is pretext consists of a single sentence, in which he contends that the explanation for cancelling the announcement "is not supported by the record, only by a Statement given by Hugo Córdova containing hearsay with no supporting documentation." ECF No. 73, at 10. This response is inadequate for plaintiff to meet his burden as to the claim in question. Mr. Córdova's affidavit provides competent evidence to support the Commissioner's reason for cancelling the vacancy announcement. Plaintiff does not elaborate on his argument that Mr. Córdova's affidavit contains hearsay, only plainly stating as such. Even assuming that the assertion that one of the

CRs in the St. Croix office requested a transfer is hearsay without an exception under the Federal Rules of Evidence, it is not apparent why Mr. Córdova's could not testify from his personal knowledge as Area Director that the Regional Office approved her transfer, that the Florida office agreed to accept her, that her pending departure prompted the VAN, or that no vacancy existed in St. Croix when said CR decided not to go through with the transfer. His affidavit unequivocally asserts this sequence of events, and does not indicate that he heard the same from another individual. At a minimum, even assuming for argument's sake that everything relating to the CR's impending transfer and the decision not to go through with it is hearsay, Mr. Córdova's affidavit bolsters the Commissioner's explanation that the Commissioner cancelled the vacancy announcement because no vacancy was available. This alone constitutes a reasonable explanation for cancelling the vacancy announcement, and consequently not promoting plaintiff to a position in St. Croix. Plaintiff does not cite to any additional evidence which suggests this explanation is not credible, such that a vacancy truly did exist, nor to anything that would connect the cancellation of the announcement to retaliation against plaintiff. Because he has not shown that the Commissioner's explanation that it cancelled the announcement due to the fact that no vacancy arose, even if plaintiff could establish a *prima facie* case as to this claim it is dismissed for failure to show the cancellation was the product of retaliatory animus.

For each of the eleven vacancies in VAN ROII 97-23-JA, the Commissioner provides legitimate, non-discriminatory reasons for the selections made by the four selecting officers. First, selecting official Ms. Hernández states that although she considered plaintiff for each of the three vacancies for which she selected, "there was really nothing in his application that stood out when compared to [her] selections." ROI 00-0223, Exhibit 7, at 1. She stated she had

14

observed the day-to-day performance of her first selectee, Ms. Vega, that was familiar with her work and her potential, and that she selected Ms. Vega "because of these professional attributes." Id. As to the selection of Ms. Esteva, Ms. Hernández notes that the candidate was her former secretary, who was promoted to the Service Representative position, in which she excelled. Id. Based on this observation of Ms. Esteva's work performance, she was selected for one of the CR positions. Lastly, as to the selection of Mr. Vázquez, Ms. Hernández notes that she "had met and dealt with him by reason of [their] membership and participation at the Puerto Rico and Virgin Islands Partnership Counsel" and that she "was most impressed with his meet and deal qualities and his displayed approach to problem solving." Id.

Ms. Montalvo, who filled three vacancies in the Mayagüez district, states: "Due to staffing limitations, I was unable to select any applicant who was not employed in the Mayagüez district." ROI 00-0223, Exhibit 5, at 2. She explains that the only factor she considered in choosing Ms. Pérez, Ms. Wanda Ramírez, and Ms. Claribel Ramírez was seniority at the office where the position was filled. Id. She adds that plaintiff was not considered for any of the three CR positions in questions because he was not employed within the Mayagüez district, and that she did not consider any other applicant on the best-qualified list who was not employed the Mayagüez district. Id.

Mr. Siaca, who selected for two of the eleven positions, states that although he considered plaintiff for that position, when compared with the two selectees plaintiff "had nothing in his record that made him stand out." ROI 00-0223, Exhibit 8, at 1. Mr. Siaca made his first selection, Ms. Carrión-Román, because she was the Service Representative who had the most seniority in the Arecibo office, which in Mr. Siaca's estimation made her one of the best

qualified candidates for the position. Id. He chose Mr. Molina for the second opening, because "[h]e was a current CS-11 CR, and [Mr. Siaca] considered this experience made him better qualified than any of the remaining candidates." Id.

Mr. Negrón, who made the final three selections, also states that when compared to those candidates selected "there was really nothing in [plaintiff's] application that stood out." ROI 00-0223, Exhibit 6, at 1. Mr. Negrón's first selection, Mr. Miranda, was selected for the Caguas office, where he had been employed for a period of approximately three years and where he had performed very well, displaying potential to assume more complex work. Id. Mr. Negrón states that this candidate was selected due to his own personal observations as well as the observations of Mr. Miranda's supervisor. Id. According to Mr. Negrón's affidavit, Ms. Sánchez was selected because she had 15 to 20 years of agency experience and her supervisor recommended her highly for the position. Id. Finally, he states that Ms. Ortiz was hired for the position in Cayey because she had previously been employed as a CR in the Cayey office, but resigned for medical reasons. Id. When she recovered, she returned to the Cayey office as a Service Representative ("SR") because no CR positions were available. Id. He selected her for the Cayey position "[s]ince she already had the CR experience and she had performed very well as a CR and SR . . . ." Id.

As to all eleven selections from the best-qualified list, the Commissioner cites to concurring official Mr. Córdova's affidavit, in which he explains that selecting officials usually base their decisions on: (1) actual observance of work performance; (2) seniority; and (3) references, and that "sometimes a combination of these factors are involved in a selection decision." ROI 00-0223, Exhibit 9, at 2. Defendant also cites to another affidavit of Mr. Córdova, in which he asserts that agency "personnel procedures grant the Selecting Officials

great authority on the criteria they may use to may a selection. The regulations do not place any restriction on what criteria to use in making a selection. Among other things, they may consider seniority, employee experience, performance awards, observation of previous work performance, the office staffing-mix needs, etc." ROI 00-0489, Exhibit 5, at 2.

For eight of the eleven positions, the Commissioner's reason for choosing another candidate instead of plaintiff is that nothing on his application stood out relative to the candidates they chose; in other words, "[t]he best candidates were selected to fill those positions" in light of the criterion or criteria upon which they placed the greatest emphasis. ECF No. 76-1, at 4. This is a reasonable explanation for failing to promote him, and is supported by evidence that would enable a rational factfinder to conclude the challenged employment actions were made for non-discriminatory reasons. Thus, defendant has met its burden of production under the second prong of the McDonnell Douglas test for these eight positions. With respect to the selections to the Mayagüez office, the Commissioner's explanation that it only considered candidates from within the district, and plaintiff was outside the district also satisfies the second phase of the burden-shifting framework. The court need not second-guess these explanations in the absence of an indication from the facts and circumstances of the case that retaliatory or discriminatory animus was the true reason behind the decisions. See Ruiz, 124 F.3d at 250 (quoting Mesnick, 950 F.2d at 825) ("[A]s we have stated repeatedly, we do not assume the role of a 'super personnel department [], assessing the merits–or even the rationality—of employers' nondiscriminatory business decisions.'").

In his response, plaintiff does not contest the veracity of any of the specific reasons provided by the selecting officials in making their decisions regarding which candidates to

choose from the best-qualified list for the open vacancies. He argues instead that there is no evidence in the record to explain why plaintiff was not chosen even though he had "the highest ranking." ECF No. 73, at 10. First, plaintiff does not contest the Commissioner's contention that "the ranking scores were not available to the selecting officials and could not have played a role in their selections." Id. Moreover, as explained by the Commissioner and supported with evidence in the summary judgment record, the best-qualified list does not rank candidates in any merit-based order; it places candidates in alphabetical order, showing the date each candidate attained their current GS grade. ECF No. 52, at 13. The selecting officials each provided adequate explanations for their selections from the best-qualified list, bolstering the Commissioner's legitimate non-discriminatory reason for not selecting plaintiff. Considering the record as a whole, the fact that the selecting officials did not explain why plaintiff was not chosen even though he allegedly had the "highest ranking" does not undermine the credibility of their rationales for selecting the candidates they chose or their assertions that nothing in plaintiff's application stood out, as the record suggests that they were not even aware of said ranking.

The only additional argument with regard to Case No. 99-0223 that plaintiff articulates in his response in opposition is that aside from Mr. Córdova's affidavit, there is no additional evidence in the record that supports the notion that selecting officials have broad authority on which selection criteria to apply. ECF No. 73, at 10. As discussed above, the Commissioner's evidence and explanation are sufficient to meet its burden of production; accordingly, the Commissioner is not obliged to produce additional evidence regarding agency selection procedures. See e.g., Ruiz v. Posadas de San Juan Associates, 124 F.3d 243, 248 (1st Cir. 1997)

18

("In order to rebut the presumption that arises upon the establishment of a *prima facie* case . . . the employer need only produce enough competent evidence, *taken as true*, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action."). Since it has articulated a legitimate rationale for its selections and has backed its explanation with competent evidence, the ultimate burden falls on plaintiff to demonstrate that the explanation for the adverse employment action is pretext. If plaintiff had evidence that Mr. Córdova's assertion that the agency's regulations place restrictions on which selection criteria selecting officers may consider, he had the opportunity to present such evidence in his response in an attempt to dispel Ms. Córdova's assertion. However, he has not done so. Simply noting that the Commissioner has not made agency hiring procedures part of the summary judgment record does little to advance his burden of "elucidat[ing] specific facts which would enable a jury to find" that the Commissioner's reasons are a sham to cover up retaliation against him. Meléndez, 622 F.3d at 52 (internal citation and quotation marks omitted).

### b.  Case No. 00-0489

The Commissioner does not contest whether plaintiff can establish a *prima facie* case of retaliation regarding the allegations related to Case Nos. 00-0489, 09-0500, or 11-0675. Thus, the analysis as to these claims will focus on whether plaintiff has met his burden of showing that the Commissioner's proferred reasons for not choosing plaintiff for the positions in question are pretext for retaliatory animus. See  Zapata v. Univision Puerto Rico, Inc., 914 F. Supp. 2d 156, 171 (D.P.R. 2011) (citing Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010)) (At summary judgment, particularly in cases where the parties' focus is on whether the employer's grounds for its actions are pretextual, 'a court may often dispense with strict

attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.').

With regard to the selections made VAN ROII 518-00-U, defendant offers as its legitimate, non-discriminatory rationale for choosing the five selectees in favor of plaintiff that they were selected based on the longevity of their service to the agency, as well as their job performance, as observed by the selecting officers for the positions. ECF No. 51, at 14. In support of the decision to hire Ms. Jeremy-Mark for the CR vacancy in St. Croix, the Commissioner cites to the sworn statement of selecting official Mr. Caraballo, dated September 20, 2000, which states:

> In my selection of the present female Claims Representative Trainee for the St. Croix Social Security Office, I considered all the candidates on the Well-Qualified List . . . . After a review of the list, I based my decision on my long time knowledge of the Selectee, her job performance during those years, her ability to meet and deal face to face with all kind of beneficiaries, her performance of other duties as assigned, her numerous performance awards which I have recommended for her and have given to her, her knowledge and involvement in the culture of the Virgin Islands community in which lives [sic] and will serve as a [CR].

ROI 00-0489, Exhibit 6, ¶ 4. As to the selections of Ms. Torres, Ms. Rivera, Ms. Santiago, and Ms. Claudio, in his affidavit dated October 11, 2000 Mr. Negrón's states:

> Ms. María Torres has been employed at the Caguas FO for nineteen years, performed very well and displayed potential to assume more complex work. Based on my personal observations as well as those of her supervisor, she was selected.

> Ms. Gladys Rivera had been employed within the Caguas District (at the Cayey Branch Office) for twenty-two years, performed very well and displayed the potential to assume more complex work. Based on my personal observations as well as those of her supervisor, she was selected.

> Ms. Evy Santiago has been employed by the Agency for twenty-one years (in the Caguas District for the last thirteen years), performed very well and displayed the potential to assume for complex work. Based on my personal observations as well as those of her supervisor, she was selected.
>
> Ms. Violeta Claudio has been employed within the Caguas District (Caguas – Humacao – Cayey offices) for twenty-one years, performed very well and displayed the potential to assume more complex work. Based on my personal observations as well as those of her supervisor, she was selected.

ROI 00-0489, Exhibit 7, ¶ 4. Mr. Negrón notes that all candidates on the best-qualified list, including plaintiff, were considered for each of the positions. The Commissioner has met its burden of articulating a legitimate, non-discriminatory reason for the selections made under VAN ROII 518-00-U; shifting the burden of persuasion to plaintiff "to show a triable issue as to whether this reason is pretext for discrimination." Zapata, 914 F.Supp at 178.

In his response in opposition to defendant's motion for summary judgment, plaintiff does not make any specific arguments regarding the selection of Ms. Jeremy-Mark to the CR vacancy in St. Croix. He does, however, provide a general citation to his own affidavits stating that he "clearly contest[s] the selecting officials [sic] alleged criteria." ECF No. 73, at 11. In one of these affidavits he states that the personal knowledge criterion was "biased and unwarranted" and characterizes it as "a preposterous application" of promoting friends instead of using merit-based criteria. ROI 00-0489, Exhibit 8, at 4. Neither this assertion, nor anything else that plaintiff contends in the affidavits to which he cites (ROI 00-0489, Exhibits 6 and 8) is sufficient to show that the Commissioner's job performance rationale for hiring Ms. Jeremy-Mark is pretext for retaliation against plaintiff. Plaintiff's statement that Mr. Caraballo's decision was biased is simply not sufficient to undercut his explanation regarding the decision to hire her. Contrary to

what plaintiff contends, job performance *is* a merit-based criterion and plaintiff's declaration that Mr. Caraballo was "biased" does not undercut the veracity of his explanation such that a reasonable jury could find that it was unworthy of credence and infer that the employer did not act for the asserted non-discriminatory reason, let alone that it did act based on retaliatory animus.

With respect to the selections made by Mr. Negrón, plaintiff focuses his pretext argument on the contention that Mr. Córdova, the concurring official for the selections, stated that agency procedures grant great authority to selecting officials on the criteria to follow in selecting candidates, but "alleged agency procedures are not part of the ROI or the record of this case." ECF No. 73, at 11. As discussed earlier in this opinion, this argument appears to misconstrue the Commissioner's burden; "[t]he defendant's burden of articulating a legitimate reason is one of production, not persuasion." Zapata, 914 F.Supp at 178 (citing Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 221 (1st Cir. 2007)). "[T]he plaintiff must prove, by a preponderance, that the defendant's explanation is a pretext for unlawful discrimination." Mariani-Colón, 511 F.3d at 221. The explanation that the four candidates were chosen because of their job performance and their years of service, particularly in light of Mr. Negrón's affidavit swearing to this same, is sufficient to meet its burden of production. Plaintiff does not contest the Commissioner's assertion that he had only been with the agency for nine years at the time of his application to the positions available under VAN ROII 518-00-U. Each of the four candidates chosen had a minimum of nineteen years of agency experience. In his response in opposition to defendant's motion, plaintiff fails to cast doubt on defendant's proffered rationale for selecting Ms. Torres, Ms. Rivera, Ms. Santiago, and Ms. Claudio from the best-qualified list, instead of

plaintiff. Taking as true that Mr. Negrón and Mr. Córdova knew of plaintiff's prior EEO complaints, no reasonable jury could find that but-for plaintiff's prior EEO and union activity they would have selected plaintiff in favor of one of the four candidates they selected for the positions.

### c.   Case No. 09-0500

With regard to the selection of Ms. Saleh-Natal to the SJ TSC Supervisor position, the Commissioner highlights her seventeen years of TSC experience in the office in SJ, noting that at the time of his application plaintiff only had four years of TSC experience in comparison. ECF No. 52, at 16. In Ms. Carasquillo's sworn statement cited in support of the Commissioner's reason for hiring her instead of plaintiff, she states that she "was looking for a candidate who had experience working at TSC. I selected Deborah Saleh Natal because she had the most experience working at [*sic*] TSC environment." ROI 00-0500, Exhibit 7, at 2. Defendant's explanation that the agency selected the candidate with the most TSC experience for the SJ TSC Supervisor position is a reasonable, non-discriminatory reason for hiring Ms. Saleh-Natel, rather than plaintiff, once again shifting the burden to plaintiff to show pretext.

In his argument that said rationale is pretextual, plaintiff asserts that the agency was prohibited from using her GS-12 position as a selection criterion because she had only held the position for less than fifty-two weeks at the time she applied for the TSC Supervisor position. ECF No. 73, at 11-12. Assuming for argument's sake that this is true, plaintiff's contention does not call the Commissioner's rationale into question. Defendant does not assert that it promoted her because she had a higher GS grade than plaintiff—rather that she had more aggregate years of TSC experience.

Next, plaintiff argues that Ms. Saleh-Natel did not have "responsibilities superior than" he did in any of her prior positions. ECF No. 73, at 12. Ms. Salah-Natel lists a myriad of job duties and responsibilities from her previous positions, which she articulates over the course of ten pages of description. See ROI 09-0500, Exhibit 11H, at 1-10. While their prior responsibilities were indeed different from each other, it is not readily apparent on what basis plaintiff is comparing their qualifications. Regardless, it is not the court's role to question the Commissioner's hiring decision absent reason to believe it is not credible. See Ruiz, 124 F.3d at 329 (internal quotation marks and citations omitted) (finding the plaintiff had not met burden of showing pretext based on differences in employment records because it was "not confronted with such disparities in their respective employment records as would virtually jump off the page and slap [it] in the face . . ."); Lehman v. Presidential Ins. Co. of America, 74 F.3d 323, 329 (1st Cir. 1996) ("[T]he fact that Lehman had been successfully directing the New England agency was insufficient, by itself, to show that Prudential's reason for hiring Dietz was pretextual. As already described, Dietz had important qualifications of his own that could reasonably lead to the belief that he was superior for this job."). Defendant's explanation for hiring Ms. Saleh-Natel is that she had the most experience working in a TSC environment—including four times the experience plaintiff did—is an entirely reasonable explanation as to why Ms. Carasquillo decided she was the best candidate for the position. Even assuming that Ms. Saleh-Natel did not have any responsibilities that were "superior" to plaintiff's prior duties in a relevant way, this would not rebut the Commissioner's explanation that she was hired instead of plaintiff because she possessed seventeen years of TSC experience in SJ or enable a jury to find that it is not a credible reason.

24

Plaintiff also contends that he "had more education than [Ms. Saleh-Natel]." ECF No. 73, at 12. A review of the record reveals that both candidates have a bachelor's degree, but plaintiff has a Juris Doctor ("J.D.") degree and Ms. Saleh-Natel has a Master's in Business Administration ("M.B.A."). See ROI 09-0500, Exhibit 11G, at 5; Exhibit 11H, at 11. Thus, both candidates did possess a post-graduate degree at the time they applied for the TSC Supervisory Position. Assuming for argument's sake that plaintiff had to undergo more years of education to attain his J.D. than Ms. Saleh-Natel did to attain her M.B.A., as with respect to plaintiff's first two arguments for pretext, a comparison of their education does not undermine the Commissioner's explanation that Ms. Saleh-Natel was awarded the positions because she had approximately thirteen additional years of TSC experience than plaintiff did. Plaintiff provides no explanation, either in his application to the TSC Supervisor position or in his response to defendant's motion, as to why the skills and knowledge he acquired in the process of attaining J.D. are relevant to the position in question, let alone why his J.D. makes him better-suited to the position that Ms. Saleh-Natal. Nevertheless, a reasonable jury could infer that his J.D. would give him a useful educational foundation for the position. However, the agency prioritized years of TSC experience over the fact that plaintiff possessed a J.D., and this decision should not be second guessed "absent clearer evidence of irrationality." Lehman, 74 F.3d at 329. Whatever reasonable inferences can be drawn from a comparison of their educational backgrounds do not create a triable issue regarding whether the Commissioner's explanation that Ms. Saleh-Natel was hired because she possessed the most TSC experience is pretext for retaliation against plaintiff because of his prior protected activity.

Finally, plaintiff points out that at the time Ms. Schuster and Ms. Carasquillo made their

decisions to select Ms. Saleh-Natel plaintiff was representing Aida Cintrón in an EEO complaint in which Ms. Schuster and Ms. Carasquillo were charged with committing discrimination against Ms. Cintrón. ECF No. 73, at 12. Without more, this temporal proximity is not enough to create a genuine issue of material fact regarding whether but-for his protected activity he would have been chosen for the TSC Supervisory Position posted under VAN SN-23122609-ROII-044 over Ms. Saleh-Natel. See Ponte v. Steelcase Inc., 741 F.3d 310, 322 (1st Cir. 2014) (quoting Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003)) (internal quotation marks omitted) ("[C]hronological proximity does not by itself establish causality, particularly if [t]he larger picture undercuts any claim of causation."); see also Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir. 2013) (citations omitted) ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage."); but see Mesnick, 950 F.2d at 828 ("There are many sources of circumstantial evidence that, theoretically, can demonstrate retaliation in a way sufficient to leap the summary judgment or directed verdict hurdles. These include . . . temporal proximity of an employee's protected activity to an employer's adverse action . . . ."). As discussed above, defendant has asserted that Ms. Saleh-Natel was selected because she had the most TSC experience, and plaintiff has not shown this non-discriminatory rationale for hiring her is pretext for retaliatory discrimination by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in it that would enable a jury to find it unworthy of credence. Gómez-González, 626 F.3d at 662-63. Nor has he come forth with any additional evidence beyond this temporal proximity that would bolster plaintiff's claim the agency hired Ms. Saleh-Natel as a result of his protected activity. In this case, in light of the defendant's nonpretextual, nondiscriminatory explanation that she was hired because of her

seventeen years of TSC experience, the temporal proximity between plaintiff's application for the TSC Supervisor position and his representation of Ms. Cintrón in an action in which Ms. Schuster and Ms. Carasquillo were charged with discrimination is not enough for a reasonable jury to find that but-for this representation plaintiff would have been promoted.

### d.  Case No. 11-0675

With regard to plaintiff's claim regarding the failure to promote him to the Deputy TSC Manager position, the Commissioner offers as a legitimate non-discriminatory reason for its decision that plaintiff did not possess the supervisory experience necessary for the Deputy TSC Manager role. ECF No. 52, at 21. Selecting official Ms. Hachicho stated in a sworn statement that there were two attributes she "considered necessary" for the position. ROI 11-0675, Exhibit 6, at 2. She "wanted someone with supervisory experience," because in the absence of the TSC Manager the Deputy TSC Manager would run the entire office. Id. She also considered claims process experience a necessity for the positions, because the selectee would supervise CRs. Id. With regard to her selection of Ms. Grisel, she asserted that she "was by far the strongest candidate based on [her] selection criteria and the references. . . . She clearly had the supervisory experience I was looking for both in a TSC and in a Field Office environment. She had claims taking experience as a [CR] and oversaw the Claims Unit in a Field Office, as a supervisor." Id. at 3. As to why plaintiff was not selected, she stated that in her "review of all the candidates, Mr. Arroyo has the claims experience but did not have any formal supervisory experience. If applicants did not meet both criteria I was looking for, I put those to the side and then looked to the people who had both criteria much more in-depth." Id.

In his response in opposition, plaintiff does not articulate an argument that contrary to the

Commissioner's statement he did possess the supervisory experience necessary for the Deputy TSC Manager position. See ECF No. 73, at 12-13. He argues that Ms. Grisel did not qualify for the Deputy TSC Manager position because the "Area of Consideration" was NY Region 2 and Ms. Grisel was employed in the SSA Boston Region. Id. at 13. Consequently, he claims that "she was outside of the established Vacancy Announcement Area [*sic*] Consideration and Management has failed to provide any justifiable reason obviate [*sic*] this requirement, moreover when there was a highly qualified candidate as Plaintiff within the Area of Consideration." ECF No. 73, at 13. The only evidence that plaintiff cites to in support of this contention is his own affidavit, in which he states: "Ms. Alicea Grisel was included by the agency in the lists violating their own policies regarding the making of the well qualified lists by the direct intervention of Regional Director Disman." ECF No. 72-1, ¶ 7. He does not bolster his argument with any evidence of an agency policy regarding selecting candidates from within an "area of consideration" or otherwise. His conclusory averment that the agency violated its own policy does not suffice to satisfy plaintiff's burden that the agency's reason is pretext for retaliation. Indeed, "[p]retext can be demonstrated through showing that an employer has deviated inexplicably from one of its standard business practices." Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 68-69 (1st Cir. 2008) (citations omitted). In this case, however, plaintiff has not adduced evidence of an agency policy or practice, or even provided a citation to the vacancy announcement. Defendant concedes that the vacancy announcement states that the "Area of Consideration" includes "current permanent SSA employees Region wide." ECF No. 52. However, it explains that the agency agreed that "at the discretion of management, the normal area of consideration for positions at this level may be expanded to include all, or portions, of

other regions or SSA nationwide," citing to an agency policy regarding areas of consideration. ECF No. 22, at 22-23; see also ROI 11-1605, Exhibit 32, at 6.  Therefore, the record actually reflects that the agency may deviate from areas of consideration, not that there is a standard policy of confining consideration and selections for position to the same. Overall, plaintiff has not raised a genuine issue of material fact regarding whether the agency violated an internal policy in selecting Ms. Grisel; his argument that Ms. Grisel was hired in violation of agency policy does not give rise to an inference that the agency's reason for hiring her was a sham intended to cover up retaliation against plaintiff.

Plaintiff also states that "the selection of Ms. Alicea is tainted by the direct intervention of Regional Director Ms. Beatrice Disman." ECF No. 73, at 13. Defendant does not contest that upon Ms. Disman's request Ms. Grisel's supervisor sent a recommendation letter in favor of Ms. Grisel to Ms. Hachichio, or that Ms. Hachichio received that letter 24 hours before selecting Ms. Grisel. Indeed, Ms. Disman admits that she "asked Mr. Maurin to check with the supervisor to find out what the background was on [Ms. Grisel]." ECF No. 71-4, at 2:7-9. Taking this as true, and bearing in mind that both Ms. Disman and Ms. Hachichio were aware of plaintiff's protected activity, it would not allow a reasonable factfinder to rationally infer that the Commissioner's rationale for hiring Ms. Grisel is untrue. The fact that the agency sought additional information regarding Ms. Grisel before making the ultimate decision to select her for a vacancy bears no obvious relation to whether it sought a candidate with the particular expertise and skill set the Commissioner claims to have sought, or whether Ms. Grisel was a more favorable candidate than plaintiff in light of those criteria. Similarly, without additional evidence the fact that the agency did not seek an additional recommendation regarding plaintiff's

29

candidacy does not create a triable issue as to whether defendant's reason is pretext for retaliation. As Ms. Hachicho states in her affidavit, she put aside candidates without the requisite supervisory experience she sought, focusing her attention on the candidates that did possess such experience. The fact that no additional recommendation was requested as to plaintiff's candidacy does not suggest that plaintiff did indeed possess that supervisory experience that the agency sought or otherwise call the Commissioner's explanation into question. Based on the summary judgment record as a whole, no reasonable factfinder could arrive at the conclusion that the but-for causation standard has been met with regard to the failure to promote plaintiff to the Deputy TSC. Therefore, in light of the discussion regarding Case Nos. 99-0223, 00-0489, and 11-0675, each of plaintiff's Title VII retaliation claims are dismissed.

### B. Sex Discrimination

Under Title VII, it is unlawful for an employer

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e-2(a)(1). The core inquiry is whether the defendant-employer intentionally discriminated against the plaintiff because of gender. Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 153 (1st Cir.1990). If the plaintiff is unable to offer direct evidence of discrimination, the burden of producing evidence is allocated according to the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The elements of a *prima facie* case for failure to promote are that the plaintiff: (1) is a member of a protected class who (2) was qualified for an open position for which she applied but (3) was rejected (4) in favor

of someone possessing similar qualifications. Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002). As with respect to Title VII retaliation claims, a burden of production then falls upon the employer to articulate a legitimate, nondiscriminatory reason for its employment decision. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that sex was a motivating factor in the challenged employment action. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000) (citing Hicks, 509 U.S. at 506-07). "At the third stage, with the initial presumption of discrimination removed, it falls upon the employee to 'present sufficient evidence to show both that the employer's articulated reason . . . is a pretext and that the true reason is discriminatory.'" Id. (citing Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999), cert. denied, 528 U.S. 1161 (2000))

Defendant forgoes arguments regarding the *prima facie* case with regard to plaintiff's gender discrimination claims, assuming for argument's sake that he has met this initial burden and contending that "the agency is nonetheless entitled to judgment in its favor because it has articulated legitimate, non-discriminatory reasons for its selections."[10] ECF No. 52, at 14. Defendant proffers the same reasons for its selections to the positions in question as it did in its argument for summary judgment on plaintiff's retaliation claims, which simultaneously satisfy its burden of production for plaintiff's claims that the failures to promote him on numerous occasions can be attributed to discrimination based on his gender. Not only are defendant's

---

[10] While neither party raises this issue, the court notes that it is possible for males to establish a *prima facie* case of sex discrimination. See e.g. Soto v. Runyon, 13 F.Supp. 2d 215, 220 (D.P.R.) ("In this case, the Court finds, contrary to Defendant's contention, that Plaintiff has made out a *prima facie* case of sex discrimination. First, Plaintiff has established that he is a male allegedly discriminated against by an employer who favors females. Although females are more commonly thought of as victims of sex discrimination, it is possible for a male, under certain circumstances, to allege a case of discrimination such that he is a member of a protected class under Title VII.").

proffered legitimate non-discriminatory reasons for selecting candidates other than plaintiff the same as to the retaliation claims and gender discrimination claims, but plaintiff's arguments for pretext are the same, as well. Acknowledging that plaintiff has a lesser burden with respect to gender discrimination, as he must demonstrate that gender was a motivating factor in the decision not to hire him rather than a but-for cause, he nonetheless has not met his burden of showing pretext for any of the failure to promote claims. As discussed above, neither his arguments in favor of pretext nor the evidence to which he cites in support thereof raise any genuine issue regarding the credibility of the Commissioner's reasons for its hiring decisions.

In response to defendant's motion for summary judgment, plaintiff does not propose any facts or cite to any evidence that suggests any of the promotion denials were motivated by his gender. In the amended complaint, in addition to a broad allegation the he is a "victim of discrimination" based on his sex, he makes three more specific, sex-related allegations: (1) that Mr. Negrón only selected one male between 1991 and June 17, 2000; (2) that Mr. Caraballo had not selected male candidates between 1991 and June 17, 2000; and (3) that Mr. Negrón and Mr. Caraballo only selected females to the five positions for which plaintiff applied under VAN ROII 518-00-U. ECF No. 1, ¶¶ 1, 28, 32-33. With regard to the first two allegations, not only plaintiff fails to cite to evidentiary support for them in the summary judgment record, but there is no allegation or evidence regarding how many total candidates either of the selecting officers chose during that time period. Without additional context or a comparison with the number of female candidates selected, even if the allegations were supported with credible evidence they would have very little probative value. While the uncontested facts do support the first allegation—that five female candidates were selected for the five vacancies available in VAN

ROII 518-00-U—it is not enough to create a reasonable inference that plaintiff did not attain one of these five positions because he is male. See e.g. Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 72 (1st Cir. 1984) ("[S]tatistical evidence alone is not sufficient to prove intentional discrimination when the statistics provided are incomplete because they do not include information as to the number of qualified women in the relevant labor market."); see also Lamphere v. Brown University, 685 F.2d 743, 750 (1st Cir. 1982) (citations omitted) ("[T]he numerical disparity between men and women at particular job levels at Brown by itself is not probative. The statistics, though striking upon first reading, may simply reflect an absence of qualified female applicants . . . .") The uncontested facts do not establish how many total applicants applied for positions under that particular VAN or how many of the total candidates were male.[11] As discussed earlier in this opinion, defendant met its burden of articulating a legitimate, non-discriminatory reason for selecting these five female candidates. Mr. Caraballo explained that he selected a candidate for one of the five positions based on his personal knowledge of that selectee and her job performance throughout that period, as well as her knowledge and involvement in the St. Croix community. With regard to the four female candidates Mr. Negrón selected, he noted that they each had at least nineteen years of agency experience at the time of his decision, while plaintiff had been with the agency less than half that time. In the face of the Commissioner's explanations, the ultimate burden falls on plaintiff to demonstrate that a triable issue exists regarding whether the agency's decisions were motivated by discriminatory animus. He has not identified "weaknesses, implausibilities, inconsistencies,

---

[11] In a motion to compel dated April 15, 2014, plaintiff requested production of all applications received for ROII 518-00-U. See ECF No. 56. Plaintiff's request was denied for the reasons articulated in the court's order dated May 9, 2014. See ECF No. 60.

incoherencies, or contradictions" in these explanations sufficient for a jury to infer that the agency did not act based on these reasons. Furthermore, he has not come forth with any other evidence from which a jury could infer the decisions not to promote him were motivated by the fact that he is male. Because plaintiff has not met his burden, summary judgment is granted for defendant with regard to plaintiff's sex discrimination claims.

## V.   CONCLUSION

Overall, viewing the summary judgment record as a whole, no rational jury could find that plaintiff was denied the promotions in question because of his protected activity or his gender. The Commissioner has articulated sufficient non-discriminatory reasons with regard to each of the decisions regarding which candidate to promote, shifting the burden to plaintiff to show that defendant's reasons for choosing the hired employee was pretext for underlying retaliatory or discriminatory motives. Because plaintiff has not done so with regard to any of his claims, defendants' motion for summary judgment is GRANTED and all claims in this case are hereby dismissed, with prejudice.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 12th day of June, 2014.

s/Marcos E. López
U.S. Magistrate Judge